**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JUANITA HILL,                                    Case No. 1:13-cv-90

        Plaintiff,                         Beckwith, J.
                                                         Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Juanita Hill filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is NOT supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on April 14, 2009, alleging a disability onset date of June 28, 2008 based upon a combination of physical impairments. Plaintiff's application was denied initially and upon reconsideration, and she timely requested an evidentiary hearing. On March 21, 2011 and again on June 20, 2011, administrative hearings were held at which Plaintiff appeared with counsel. Plaintiff and her husband testified at the first hearing, and Plaintiff and a vocational expert testified at the second hearing. Administrative Law Judge ("ALJ") Gregory G. Kenyon issued a decision on

August 18, 2011, concluding that Plaintiff was not disabled. (Tr. 14-22). The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner. Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 32 years old at the time of the ALJ's decision. The ALJ determined she had at least a high school education[1] and past relevant work as a construction worker, retail clerk, and dietary aid. (Tr. 21). The ALJ found that Plaintiff "has the following severe impairments: pericarditis/sick sinus syndrome/ a second degree AV heart block with residuals of 2006 surgery to implant a pacemaker, a history of pseudo-seizures, migraine headaches, and mild asthma." (Tr. 16). However, the ALJ also determined that none of the impairments or combination thereof met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (*Id.* at 18). Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of sedentary work, except as further limited by the following:

> (1) standing or walking for more than 30 minutes at a time followed by at least five minutes of sitting; (2) no crawling, kneeling, or climbing of ladders, ropes, or scaffolds; (3) frequent balancing; (4) no work around hazards such as unprotected heights or dangerous machinery; (5) no driving of automotive equipment; and (6) no concentrated exposure to respiratory irritants or temperature extremes.

(Tr. 18). Based upon testimony of a vocational expert, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. (Tr. 21). Therefore, the ALJ reasoned that Plaintiff was not under a disability. (Tr. 22).

---

[1] Although Plaintiff represents herself as having an "eleventh grade" education, at the evidentiary hearing she testified that she had graduated from high school and had completed one year of college. (Tr. 55).

2

In her statement of errors, Plaintiff argues that the ALJ erred when he: (1) failed to acknowledge a prior decision by another ALJ that was potentially binding; (2) failed to address the Listings of Impairments applicable to seizures or to somatoform disorders; (3) failed to understand the medical evidence; (4) failed to properly evaluate the medical opinion evidence; and (5) improperly found a significant number of jobs existed in the region.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

#### 1. Failure To Discuss Prior ALJ Decision

Plaintiff first argues that remand is required because the ALJ failed to discuss a prior ALJ's decision. In the Sixth Circuit, prior decisions by an ALJ or the Appeals Council are binding absent evidence of a changed condition. *See* Acquiesance Ruling ("AR") 98-4(6); *Drummond v. Com'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). In 2008, ALJ Larry Temin previously denied Plaintiff disability benefits, (Tr. 94), but ALJ Kenyon's 2011 opinion failed to discuss, or even to acknowledge, that prior decision. The issue is relevant because, although both ALJs imposed similar restrictions, each included slightly different postural restrictions. For example, ALJ Kenyon indicated that Plaintiff is capable of "frequent balancing" but ALJ Temin's prior decision was silent on that issue. Yet, ALJ Temin previously limited Plaintiff to only "occasional" stooping and crouching, which (at least in theory) may impact Plaintiff's ability to balance.

Defendant concedes that the ALJ failed to comply with Sixth Circuit law in this respect. However, Defendant contends that the error was harmless, because "the ALJ discussed the same restrictions that the prior ALJ imposed and explained to what extent and why he departed from them." (Doc. 13 at 20). In several ways, ALJ Kenyon's RFC was more restrictive: he indicated "no" kneeling, for example, whereas ALJ Temin allowed "occasional" kneeling. ALJ Kenyon also indicated that Plaintiff could not tolerate concentrated exposure to respiratory irritants or temperature extremes. (Tr. 18). Additionally, Defendant reasons that Dr. Holbrook, the state agency reviewing

5

physician whose opinion ALJ Kenyon gave "significant weight," expressly adopted the prior ALJ's RFC finding in light of *Drummond*. (Tr. 418).[2]

Given ALJ Kenyon's determination that Plaintiff is limited to a restricted range of sedentary jobs, the slight variation from the prior RFC (i.e., eliminating a requirement that Plaintiff stand and/or walk for no more than 2 hours in a day, and eliminating stooping and crouching restrictions), could be deemed harmless.[3] However, given that remand is required for other reasons, the Commissioner will be required to correct this legal error.

### 2. Failure to Address Additional Listings – Step 3 Error

Plaintiff's second assignment of error more clearly requires remand. Plaintiff argues that the ALJ failed to sufficiently articulate the basis for his conclusion that Plaintiff's impairments did not meet a Listing. In support of her argument, Plaintiff relies heavily upon a prior unpublished decision by this Court, *Risner v. Com'r of Soc. Sec.*, Case NO. 1:11-cv-36, 2012 WL 893882 (S.D. Ohio, March 15, 2012)(Spiegel, J.).

In *Risner*, the ALJ failed to reference any specific listing prior to concluding that the plaintiff did not meet or equal any Listing at Step 3. The undersigned magistrate judge acknowledged case law from other jurisdictions holding that a blanket statement that a claimant does not meet or medically equal any Listing is legally insufficient to comply with Step 3 of the sequential analysis. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Burnett v. Com'r of Soc. Sec.*, 220 F.3d 112, 119-120 (3rd Cir.

---

[2] While ostensibly referring to the "adoption of the [prior] ALJ RFC," Dr. Holbrook actually created a conflict with the prior RFC by opining that Plaintiff could stand/walk for "at least 2 hours in an 8-hour workday" rather than "no more than 2 hours." (*Compare* Tr. 418 with Tr. 94).
[3] Sedentary work allows for standing and/or walking "occasionally," which is generally interpreted as no more than 2 hours of an 8-hour day. SSR 84-10, 1983 WL 31251, at *5 (1982).
.

6

2000). However, based upon Sixth Circuit authority, waiver, and alternatively, the perceived harmlessness of any error on the facts presented, the undersigned recommended affirming the ALJ's decision in *Risner,* reasoning:

> [T]he undersigned Magistrate Judge has recommended affirming many administrative decisions wherein the ALJ did not specify either the precise Listing that he or she considered at Step 3, or undertake a detailed analysis of why the particular claimant did not meet that Listing. In most of the prior cases before the undersigned, however, no particular error at Step 3 has been alleged, resulting in waiver.

*Id.*, R&R at 2012 WL 219539 at *3. .

United States District Judge S. Arthur Spiegel rejected that recommendation on the basis of the plaintiff's objections, published case law from other circuits, and the unpublished *Reynolds*. In remanding to the Commissioner, U.S. District Judge Spiegel wrote:

> Requiring a reasoned and explained conclusion is not merely a formalistic requirement. On the contrary, as noted by the Sixth Circuit, it is a necessary component for this Court to ascertain whether the ALJ's decision was supported by substantial evidence. It is not for the Magistrate Judge to step into the shoes of the ALJ and complete his job for him. The ALJ should, in the first analysis, assess whether the evidence put forth shows that Plaintiff meets or equals a Listing. Should he determine she does not, the ALJ must explain his decision with a discussion and analysis of the evidence.

*Risner*, 2012 WL 893882 at *5; *contrast M.G. v. Com'r of Soc. Sec.*, 861 F. Supp.2d 846, 860-861 (E.D. Mich. 2012)(holding that an ALJ's failure to analyze the elements of a Listing under Step 3 may be considered harmless in some cases, without the Court overstepping its primary role as a reviewer of fact).

Drawing an analogy to *Risner*, Plaintiff here argues that ALJ Kenyon discussed only one potential Listing (Listing 4.05, pertaining to recurrent cardiac arrhythmias), without mention or discussion of two or three additional relevant Listings. Specifically,

7

Plaintiff points to two Listings that apply to seizure disorders (Listings 11.02 and 11.03) and a third Listing that encompasses somatoform disorders (Listing 12.07).

In response to Plaintiff's assertion of error, Defendant first argues that "only minimal articulation is required at step three," (Doc. 13 at 12), citing *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985)("Although the ALJ's findings of fact could have been stated with more particularity, we are not persuaded that his findings are legally insufficient."). In *Risner*, however, Judge Spiegel rejected *Price* as "irrelevant" since it did not involve a Step 3 issue, and dealt with a widow's disability benefits with stricter standards than are applicable to wage-earner's disability benefits. *Risner*, 2012 WL 893882 at *3.

Defendant next argues that the ALJ adequately explained his reasons for determining that Plaintiff does not meet any cardiac listing at Step 3, and was not required to reiterate his prior analysis of that condition under the specific "Step 3" findings. Unlike *Risner*, where the ALJ did not discuss *any* particular Listing, ALJ Kenyon elaborated on his Step 3 analysis to some degree:

> In particular, the claimant's impairments do not meet section 4.05, recurrent arrhythmias. The claimant's cardiac rhythms are well controlled on her treatment regimen, as discussed above. She also does not meet the criteria for any other cardiac listing.

(Tr. 18). The undersigned agrees that the ALJ's analysis was sufficient with respect to the *cardiac* Listing. However, the issue presented here is whether the ALJ erred by failing to consider the entirely separate seizure and somatoform listings, both of which Plaintiff argues are relevant to her seizure disorder.

As to that argument, Defendant relies upon a Ninth Circuit case that held "[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed

8

to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-91 (9th Cir. 1990). Although the Sixth Circuit has never articulated in a published case the precise level of analysis required at Step 3, the appellate court has held that it is the claimant who bears the burden of proving that she is disabled "[t]hrough step four." Such a burden arguably would include providing sufficient argument and/or evidence to alert the Commissioner of any claim that she meets or equals a particular Listing. *See Jones v. Com'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). In this case, the Defendant contends that because the ALJ discussed the medical evidence concerning the severity of impact of *all* of Plaintiff's various impairments, his opinion implicitly contains sufficient discussion of why Plaintiff does not meet or equal Listing level severity at Step 3.

In this appeal, however, Plaintiff's Step 3 argument is highly focused on Plaintiff's seizures; she does not contend that she met a Listing for asthma, migraines, or any other disorder. The undersigned likewise focuses on the ALJ's analysis of the seizure evidence:

> The record also shows pseudo-seizures and mild asthma. Medical progress notes dated January 22, 2010, showed that the first of the pseudo-seizures occurred in 2002 and that the claimant had them on the average of approximately one every two months. There was no initial event, including a head injury, that precipitated them. The claimant reported that during these events she lost consciousness, lost bowel/bladder control, and that her eyes rolled back in her head, with her body curling up. She stated that she saw a visual aura beforehand. She denied ever having had an MRI done or having seen a neurologist (Exhibit B12F/28).
>
> The Claimant had, however, seen a neurologist on September 9, 2009. Dr. Colin Zadikoff evaluated the claimant's headaches and seizure-like activity. He found it difficult to explain the claimant's symptoms, stating that it was unlikely that the claimant's seizure-like episodes were true seizures. He concluded that she might be having syncopal episodes with

9

> associated clonic activity. Dr. Zadikoff continued the claimant on Topamax and gave her Fioricet for individual headaches. . ..

(Tr. 18).

In addition to the above-quoted text, the ALJ discussed Plaintiff's testimony at the first hearing that "[s]he has seizures with shaking, which she can sometimes fight off" but which cause weakness, and three-day severe headaches afterwards. (Tr. 19). The ALJ noted the testimony of her husband that "he has witnessed the seizures," which he described as involving "blank stares, convulsions, and [loss of] bodily control." (Tr. 19). Mr. Hill testified that his wife "cannot walk and has no strength," and that [h]er weakness after a seizure lasts for 2 to 3 days and she is unable to climb stairs for a day." (*Id.*). Last, the ALJ discussed the "medical episode" that caused him to grant Plaintiff's request to continue her first hearing, which Plaintiff described as "a seizure for which she had to go to an emergency room," but which "was over" by the time she arrived at the ER. (*Id.*).

The ALJ summed up his analysis of the seizure evidence as follows:

> The etiology of these complaints has not been determined. A CT scan of the claimant's head taken in December 2006…showed some evidence of minor intracranial bleeding in the remote past but no true infarct. No electroencephalogram testing has been taken. The claimant's complaints of intermittent syncopal or pre-syncopal episodes can best be characterized as pseudoseizures, as indicated in the medical evidence above. Despite her allegations of seizures significantly limiting her, she is not taking any anti-convulsant medication. The seizure diary submitted by the claimant…shows frequent episodes but the allegations therein are uncorroborated. Although the claimant testified…that she experienced a seizure in the middle of the first hearing, records from University Hospital from that date show only musculoskeletal chest pain….

(Tr. 20).

10

Based on the ALJ's description and analysis, Defendant contends that the seizures could not possibly meet or equal a seizure Listing. Indeed, Listing 11.02 is for "convulsive epilepsy with major motor seizures," and Listing 11.03 is "nonconvulsive epilepsy with minor motor seizures," both of which require specific phenomena of seizure activity to be "reported by a physician, or substantiated by testimony of a person other than the plaintiff 'if professional observation is not available.'" 20 C.F.R. Part 404, Subpt P, App. 1, §11.00A. Listing 11.02 requires a showing of epileptic seizures that occur "more frequently than once a month," while Listing 11.03 requires seizures "more frequently than once weekly." Both Listings 11.02 and 11.03 also require the seizures to occur in spite of at least three months of prescribed treatment.

Defendant urges this Court to affirm, based on a comparison of the above criteria to the ALJ's findings that medical corroboration of Plaintiff's seizures indicated that they occurred only once every two months, notwithstanding her more frequent "seizure diary," and that the seizures were not epileptic in origin and therefore were not treated with traditional anti-seizure medication. *See, e.g., Coleman v. Astrue*, Case No. 3:05-cv-389, 2010 WL 28567 (M.D. Tenn., Jan 5, 2010)(affirming ALJ decision that claimant, who had been diagnosed with non-epileptic pseudo seizures, could not meet Listing for epileptic seizures).

Notwithstanding the Defendant's reliance on medical evidence that Plaintiff's seizure disorder did not actually meet Listing 11.02 or 11.03, the undersigned finds remand is required for further review. In addition to *Reynolds* and Judge Spiegel's instruction in *Risner*, the undersigned finds persuasive the analysis of the court in *Brown v. Com'r of Soc. Sec.*, 1:12-cv-2709, 2013 WL 3873230 (July 25, 2013), on

11

similar facts. The undersigned also emphasizes that this is not a case in which the Plaintiff took a "guess the relevant Listing" approach, without coming forward with any relevant evidence to put the Commissioner on notice that she sought a determination on a particular listing. Throughout the disability process in this case, Plaintiff made clear that her seizures constituted a significant, if not the primary basis, for her disability claim. (Tr. 31-33, 41, 52-55, 59-61, 63, 66-67, 60-85, 223, 233). Her attorney specifically argued to the ALJ that "due to the frequency of the seizures she would meet the [seizure] listing," (Tr. 31). *Accord Miller v. Com'r of Soc. Sec.*, 181 F. Supp.2d 816, 820 (S.D. Ohio 2001)(directing remand where ALJ's decision contained no discussion of seizure listing, and plaintiff presented "evidence suggesting that he was disabled under Listing §11.03" based upon objective EEG findings, and testimony concerning the frequency and severity of his epileptic seizures).

Defendant asserts that Plaintiff has waived any claim that her seizures also should have been considered under Listing 12.07 as a somatoform disorder. Listing 12.07 states that a mental disability based upon a somatoform disorder can rise to listing level severity when it includes medically documented evidence of a disorder involving movement and control, such as psychogenic seizures, and satisfaction of "B criteria" typically applied to mental impairments. Defendant points out that Plaintiff fails to cite to any specific diagnosis of somatoform disorder by any physician, or to evidence to support her very recent claim that she suffers from that particular psychiatric disorder. While the ALJ identified "a history of pseudo-seizures," he did not include the broader category of "somatoform disorder" as one of Plaintiff's severe impairments at Step 2, and Plaintiff does not raise a Step 2 error in this appeal. Given those facts, and settled

law that it remains a plaintiff's burden to prove her disability, Defendant asserts that Plaintiff has waived the related argument that the ALJ failed to consider a somatoform Listing at Step 3.

The issue of whether Plaintiff has waived argument relating to Listing 12.07 for a somatoform disorder is close. Notwithstanding cases such as *Brown*, the undersigned can find close fact patterns in other unpublished cases in which courts have affirmed a non-disability finding. *See, e.g., Bowden v. Com'r of Soc. Sec.*, 173 F.3d 854 at *8 (6th Cir. 1999)(Table, holding that medical evidence did not satisfy Plaintiff's burden to show that pseudoseizures met Listings 11.02, 11.03, or 12.07); *see also generally Hogg v. Sullivan*, 987 F.2d 328 (6th Cir. 1993)(discussing criteria of somatoform Listing 12.07 in course of affirming that plaintiff did not meet B criteria).

On the other hand, Plaintiff's counsel did refer to Plaintiff's treatment for her pseudoseizures with antidepressants (Tr. 31), and both Plaintiff's testimony, the testimony of her husband, and counsel all heavily focused on her seizure history. When arguing that her client's seizures met a Listing, counsel did not identify the precise number of the Listing. Given that Listing 12.07 specifically references pseudoseizures, and that remand is necessary based upon the ALJ's incomplete analysis of whether Plaintiff's seizure disorder was of listing level severity, the undersigned does not find the issue of Listing 12.07 to have been waived.

### 3. Analysis of Medical Evidence

In her third assertion of error, Plaintiff argues that even though ALJ Kenyon provided an analysis of the relevant medical evidence "the manner in which he described Plaintiff's impairments, and the conclusions he drew…make it clear that [he]

13

did not understand the significance of the objective findings pertaining to Plaintiff's various medical impairments." (Doc. 10 at 13-14).

For example, Plaintiff argues that the ALJ misconstrued the evidence concerning her cardiac arrhythmia by concluding that it was "relatively well-controlled." (Tr. 16-17, 19-20). Plaintiff points to evidence that confirms that her cardiologist found the pacemaker to be medically necessary, despite the fact that leaving it in place may be contributing to or even causing Plaintiff severe chest pain. But other than arguing that the pacemaker is frequently needed, Plaintiff does not point to any significant evidence that the pacemaker is unable to keep her cardiac rhythm in check as it is designed to do. The ALJ's reference to objective tests and other medical evidence, by contrast, provides substantial evidence to support the ALJ's conclusion that Plaintiff's cardiac arrthymia is not itself disabling.

In a related argument, Plaintiff complains that the ALJ "did not understand or properly credit the evidence about Plaintiff's severe chest wall pain, which comes from her pacemaker." Having reviewed the referenced evidence, the undersigned agrees that the ALJ has- to some extent- mischaracterized the evidence as involving only "intermittent" chest pain that is "not so pronounced that it would preclude sedentary work." (Tr. 20). While the Court does not agree that the evidence of a disabling level of pain is uncontested, more analysis is required on the record presented. The ALJ does not appear to have fully considered the evidence of Plaintiff's chest wall pain complaints independent from her cardiac disease.

Plaintiff similarly complains that the ALJ did not properly analyze her pseudo-seizures, which have been previously discussed. As the ALJ noted, the etiology of

Plaintiff's seizures is not entirely clear in the medical record but he found them to be "pseudo-seizures." By definition, anti-convulsant medications would not be appropriate treatment for pseudo-seizures, and EEGs – while sometimes used to help distinguish between pseudo-seizures and epileptic seizures – would not register positive findings for pseudo-seizures. In keeping with the Step 3 analysis previously discussed, the ALJ should reevaluate the medical evidence relating to Plaintiff's seizure complaints. For similar reasons, the ALJ should reconsider the record concerning Plaintiff's headache complaints, particularly as they relate to her seizure complaints.

### 4. Opinion Evidence

In her fourth claim, Plaintiff contends that the ALJ erred by failing to articulate the weight he gave to the opinion of Plaintiff's treating physician, Dr. O'Dea. Were it not for the other errors noted, the undersigned would reject this claim. The analysis of the ALJ contains sufficient articulation of the weight he gave to Dr. O'Dea, and significant evidence to support the adoption of some but not all of the restrictions on which Dr. O'Dea opined. (*See* Tr. 20-21). However, because the referenced errors may have impacted the analysis of Dr. O'Dea's opinions as well, it is appropriate to require the ALJ to reconsider Dr. O'Dea's opinions in the context of the record as a whole.

### 5. Vocational Expert Testimony

Plaintiff's fifth assertion of error challenges the VE's testimony that a significant number of jobs exists that Plaintiff can perform. Primarily because of the potential ripple effect of the prior errors on Plaintiff's RFC and the hypothetical given to the vocational expert,[4] remand should include new vocational testimony.

---

[4] Because, on remand, the ALJ could determine that Plaintiff meets or equals a Listing or alternatively,

### III. Conclusion and Recommendation

In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit set forth "what a district court should do once a determination is made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed." *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at 176 (emphasis added). This is not a case in which all factual issues have been resolved.

Therefore, for the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB and SSI be **REVERSED** because it is NOT supported by substantial evidence in the record as a whole. This case should be remanded for further review and evaluation at the administrative level, consistent with this Report and Recommendation.

                                         */s Stephanie K. Bowman*
                                         Stephanie K. Bowman
                                         United States Magistrate Judge

---

that Plaintiff can only perform a different set of jobs, it is unnecessary to discuss Plaintiff's argument that the number of jobs to which the VE testified is legally insufficient to satisfy the Commissioner's burden at Step 5 to show that Plaintiff is not disabled.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| JUANITA HILL, | Case No. 1:13-cv-90 |
| Plaintiff, | Beckwith, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).